**COOPER**

v.

**CITY OF NEW BRAUNFELS.**

No. 10192.

Court of Civil Appeals of Texas.

Austin.

Jan. 27, 1954.

Rehearing Denied Feb. 10, 1954.

Lieck & Lieck, San Antonio, Horace Wimberly, Jr., Yoakum, for appellant.

Fuchs & Riedel, New Braunfels, R. H. Mercer, San Antonio, R. A. Bartram, City Atty., J. H. Schleyer, New Braunfels, for appellee.

HUGHES, Justice.

Rayford Cooper, appellant, sued the City of New Braunfels for damages for injuries sustained by him while swimming in the municipal pool in Landa Park within the corporate limits of New Braunfels.

This case was tried to a jury which returned a verdict unfavorable to appellant and the court, in accordance therewith, rendered judgment that he take nothing by his suit.

Appellant has presented several points of error upon which he relies for a reversal but the view which we take of the case is that, as a matter of law, he was guilty of contributory negligence and cannot recover. This conclusion renders all trial errors immaterial and dispenses with any necessity for us to consider them.

We insert below a photograph showing the location of the accident which occurred April 25, 1950.

This picture was made in October, 1952, but there has been no material change in the premises in the meantime. When appellant was injured, however, and although the water was clear, there were several swimmers in the pool.

Appellant alleged that at about 3:20 on the afternoon of April 25, 1950, he dived into the pool from the near bank, as shown in the picture, and struck his head against the stone ledge there depicted of the presence of which ledge he was in "total ignorance." He charged the City with negligence in maintaining such submerged ledge and with failure to give warning of its presence and of the depth of water above the ledge and in its vicinity and in failing to provide barriers to prevent persons from diving from the place from which he dived.

Shown in the above picture, nearest the camera, is a flagstone walk, then an eight inch stepdown to a fourteen inch wide rock wall at the water's edge. The top of this wall is four inches above the surface of the water, the depth of which is eighteen inches at the edge. There is a slight slope of the graveled bottom of the pool towards the submerged rock ledge [1] so that the top of this ledge is twenty-two inches below the surface of the water. The depth of the water on the pool side of the ledge is about four feet. The near or bank side of the rock ledge is about flush with the bottom and is eight or nine feet from the rock wall at the water's edge.

The cable shown in the picture is about two feet above the surface of the water and is swung between iron posts which are sunk just outside the pool side of the rock ledge. The cable and posts were painted an orange color.

At the time of his injury appellant was 20 years of age, 5 feet 11 inches tall, weighed 185 pounds, was a senior in Yoakum High School, played baseball and was a good swimmer.

Appellant was in Landa Park for the first time and was attending a class picnic.

He reached the park about 10:00 a. m., rode around for a while, had lunch, went row-boating, dressed for swimming and went in the pool about 2:00 or 2:30 p. m. He spent about 30 minutes on the deep side of the pool diving from the bank several times and perhaps from the short diving board and then he swam directly across the pool. What happened then and why we will let appellant tell in his own words:

"Q. Then when you swam across the pool, when you reached the other bank, what did you do? A. Well, got out.

"* * * * * *

"Q. When you got out of the pool from that side there you necessarily had to go over this ledge, didn't you, through this cable, when you went out on that bank to get on the bank you had to go over that ledge and cable, didn't you? A. I imagine so.

"Q. Imagine so. You couldn't get there any other way, could you, Mr. Cooper? A. That is right.

"Q. In other words, you had to go through the very thing that you hurt yourself on in order to get to that bank where you dove off, didn't you? A. Yes, sir.

"* * * * * *

"Q. How deep was the water when you got to the bank? A. I don't remember.

"* * * * * *

"Q. But you had to go necessarily between this ledge and the cable in order to get to that bank, didn't you? A. Yes, sir.

"Q. Then when you got on the bank, how did you attempt to dive there? Were you going to go over that cable or were going to go under that cable? A. Under the cable.

"* * * * * *

1. This rock ledge is really a secondary rock wall. .

"Q. And how much space was there between that cable and the water? A. I don't know. The picture shows.

"Q. How much would you estimate? Just give the jury some idea about what you think—A. Way it looked to me anyway from two to three feet.

"Q. Two to three feet, and you were going to go between that ledge and the water, is that right? A. It was farther enough out in the water to make.

"     *     *     *     *     *     *

"Q. * * * How far was it from the bank to the cable? A. Well, it was, best I can remember anywhere from six to eight feet.

"Q. How tall were you at that time, Mr. Cooper, please, sir? A. I was about six feet, almost six feet, about five eleven.

"     *     *     *     *     *     *

"Q. When you got on that far bank over there and tried to dive back from that side, did you take a run at it or did you attempt to go through from a stand, so to speak, or did you back a little way and take a run at it? A. Best I can remember, I stood still.

"     *     *     *     *     *     *

"Q. Did you attempt to dive off of the step, or the bottom step, or did you attempt—there is a walk along there; you know that? A. Yes.

"Q. Did you leave from the walk or did you leave from that step just below the walk? A. I left from the walk.

"     *     *     *     *     *     *

"Q. Did your foot slip or anything like that? A. Not that I remember anything about.

"     *     *     *     *     *     *

"Q. What did you do? Just tell us how you attempted to dive? A. Just dived off, just—

"Q. Put your hands out in front of you? A. Yes.

"Q. And your intention was to go between that ledge and that cable, is that correct? A. That is right.

"Q. And make it out into that deep water? A. That is right.

"Q. And when was the first time that you realized you were not going to make it? A. I didn't know it.

"Q. You never did realize it. A. No, I didn't.

"     *     *     *     *     *     *

"Q. Did I understand you to say—. I am not entirely clear on that—did I understand you to say that you could not on that day see the edge of that shallow place, that wading area, you could not see the edge of that? A. I couldn't tell how deep it *were.*

"Q. You could see it? A. Yes, sir.

"Q. You did see it and you attempted to dive in there not knowing how deep it was, is that your testimony? A. It looked deep enough to dive in to me.

"Q. It looked deep enough to dive in. How much water does it take for you to dive in if you are leaving from a place where you were leaving from over there, and you had that cable out there about your body length from you, about how much water would it take to dive in? A. I didn't figure it would take that much.

"Q. Tell me about how much water it took for you to dive in? A. I don't really know.

"Q. Would you estimate it would be safe to attempt to dive in two feet of water? That is what I want to know. A. I don't know.

"Q. You don't know. But anyway you attempted to dive there and you

say you could see that ledge, is that right? A. No, I couldn't see a ledge.[2]

"Q. I thought you said while ago you could see it, but you didn't know how deep it was? A. No, I didn't see no ledge. I did see how deep—the water was deep enough to dive in, but I never saw no ledge.

"Q. Could you see the bottom? A. Yes, sir, I could see the bottom. The water was—

"Q. Could you see this ledge out there where this shallow part dropped off out there about seven or eight feet? A. No.

"Q. You couldn't see that? Why couldn't you see it? A. Well, I—

"* *   *   *   *   *

"Q. Did you look? A. Best of my knowledge it looked deep enough to dive in...That is all I know, and that is the reason I dived.

"Q. And you thought you could make it through there, is that right? A. That is right.

"Q. You tried to make it through and didn't make it through, is that right? A. That is right."

It has been repeatedly held that a person is the best if not the sole judge of his own strength, endurance and physical capacities. Waring v. Harris, Tex.Civ.App. Austin, 221 S.W.2d 345, writ refused, and authorities there cited.

The danger inherent in the dive made by appellant was one which no prudent person would have risked. All of the elements of danger were either open to common observation or were peculiarly known to appellant. Yet in spite of this knowledge he made the dive in the mistaken belief that he had the skill and strength to make it safely. This error was of appellant's own making and precludes recovery by him in this case.

The judgment of the trial court is affirmed.

Affirmed.

2. As noted above this ledge was flush with the bottom of the pool as viewed from where appellant stood.